Turn to the next case on our calendar, U.S. v. Merlin Alston. Morning. May it please the Court, my name is Roger Bennett Adler. I am the Pellet Counsel. I did not try the case. My participation in the case began with a post-verdict motion and the appearance before the defendant, who is currently serving a 20-year sentence in the Federal Correctional Facility as a first-time offender, when I moved to set aside the verdict and ultimately argued on sentencing. There are three issues, from my perspective, that are worthy of the Court's time. Point No. 924C and the exemption set forth by Congress in Section 926B as in Boyd. The second argument deals with what I would simply characterize as a NAPU error, failure to correct perjurious testimony in the withholding of Brady material concerning trafficking in contraband by the government's key cooperator, and lastly, some guideline issues that may or may not attract the panel. Turning to 926B and the exemption, this is a case in which the defendant at all relevant times was a New York City police officer. Count Two charged him in a four-year period, no specificity, looked to me like a multiplicitous charge. Trial counsel was, let me put it charitably, asleep at the switch, so there's no indication, a gun, a firearm, a shotgun, operable, unoperable. In any event, the government lays out two scenes constituting this act of the indictment, which is Count Two. Act One is during the course of the case, the defendant carried a service revolver, such service revolver possession, which was noted in the original indictment in the state court. They took it away. The feds took it away from the state court so they could add this count and it get exempted from the accomplice testimony rule in the state of New York. And what they did was they added this count and they believed and convinced the trial judge that 926B, which is the exemption for law enforcement, had no applicability. This defendant acted at all relevant times under a direction of carrying his service revolver. Excuse me, though. Wasn't the jury convicted, Mr. Alston, on the 924C count after being properly instructed that conviction was proper only if Alston possessed the firearm in furtherance of a drug crime? No. He was convicted, your use of the term, properly convicted. I take issue with the jury should have been charged 926B. The lawyer never asked for an instruction in connection with that, so the jury- But the point is that if the jury found that he carried it in furtherance of a drug crime, that he had a purpose, didn't have to find it was his only purpose, but if he also carried it in furtherance of a drug crime, why wasn't that adequate to convict? That is the 926B argument. Because 926B, in addition to the penal law exemption and in addition to the patrol guide exemption, the penal law and the patrol guide impacted on his mental state, so he lacked criminal intent because the penal law and the patrol guide required- But the jury found the criminal intent because that was the instruction. But 926- Didn't the instruction by saying that there needs to be a finding that it was carried in furtherance of the narcotics crime suffice to satisfy this issue? No. If the answer was he only carried it because he was supposed to carry it even when he was off duty and it was not his goal to further the drug enterprise by carrying the weapon on these particular occasions, he would not be guilty. No, because to get to that result requires ignoring 926B. The government said- Does 926B authorize the carrying of a firearm in furtherance of a narcotics conspiracy? No, it provides a blanket exemption for law enforcement officers. At page 23 of the government's brief, they essentially challenge the breadth or the distance that I am going here. So let me lay down the gauntlet clear and complete. The Congress, in enacting 926B, never said that the exemption for law enforcement doesn't apply if the law enforcement officer uses the firearm in connection with a crime. It's a statutory omission. If the police officer took his service weapon and went into a bank with it and held up the No. No, he could be prosecuted and- Because any law enforcement officer is automatically allowed to use a firearm in furtherance of a crime based on section 926. 926, I phrase it differently. 926B creates an exemption that is not limited to cover the scenario that you laid out. I'm not suggesting it's inappropriate. I'm simply saying the Congress didn't do it. What the judge did and what the government has argued is to read in that exemption. That was not passed by the Congress. And because it wasn't passed by the Congress, the police officer, in your hypothetical, Judge Lynch, could be prosecuted for murder, could be prosecuted for robbery, but not 924C. That's the position of the defense. That's the issue that has to be resolved. The Congress didn't fix it. It was sloppy. And my answer is, let them go to Mitch McConnell. Let them go to Ryan. Let them fix it up. But you can't fix the statute. I'm standing with Judge Scalia. Strict construction. What does the law say? My client is entitled, under the doctrine of lenity, to the benefit of the bounce. The second issue- Has any other court ever adopted that theory? The one 926B decision that's cited in the brief is the Ord case from the- Ord versus the District of Columbia, where the defendant was prosecuted, I believe, in Virginia. Virginia or the District of Columbia federal court. And the indictment was dismissed because 926B created- 926B says you may carry a concealed firearm. That would seem rather clearly to preempt any prosecution for carrying a concealed firearm in violation, for example, of state laws that set licensing requirements or something of the sort. But I don't see where it says that this is an exception to 924C. Well, the two were read together. That was the intent to make sure law enforcement officers- It's not so plain. We're really looking to the intent of- Oh, no. I didn't mean to imply that anybody would need summer school in order to deal with the statute. I'm simply saying that this is a glitch. They didn't cover it. It wasn't contemplated. I'm not saying that my client gets a medal for his behavior. I'm simply saying he's here saying, what about me? I'm not chopped liver. I ought to get the benefit of it. The second aspect is the shotgun. The shotgun aspect, carrying an inoperable shotgun to a meeting and whether that's a drug crime, wasn't a drug crime, it was a beef over abroad. That was the whole thing. Should never have been in 924C. They also rewrote the- It was a beef over abroad that started the problem. But then it was where he carried the shotgun was to a meeting that was called by a drug dealer to make peace between two of his suppliers because the beef was bad for business. Does that affect the issue at all? I can't quarrel with it, but I'm simply saying that the statute doesn't cover beef with abroad situation. That's the core of what this was about. The rest of it, the impact upon the business is something that they wrote in. The core of what it's about is what the jury decides as a factual matter, isn't it? The jury is there to decide whether this shotgun was carried in furtherance of a drug conspiracy. But it depends on the facts that were elicited and the facts that were elicited indicated it was a social dispute. No drugs were possessed. No drugs were transacted. No drugs were discussed. I understand your point. Can I just ask one technical question? Are these issues of matters of law such that the government would have to be right about both of these issues to sustain the count as opposed to matters of factual insufficiency? The last one sounds like a matter of factual insufficiency. If either one is infirmed because the count involved two separate transactions, it would leave us to have to speculate about whether or not the jury resolved which- One count is factually insufficient. One aspect of the count is factually insufficient. We presume that the jury didn't return a verdict of guilty beyond a reasonable doubt on the count for the aspect of the count for which there was insufficient evidence. That's different than when there is a legal defect in one prong where the jury wouldn't know that or understand that. Well, I'm indicating both. And in any event, with the court's permission, could I just have one minute to just talk about NAPIU, and I won't discuss the sentencing guidelines? You're going to have some time on reserve, and you'll be able to tell us then. Then I will follow the court's directive. Yes, sir. Mr. McKay. Thank you, Your Honor. May it please the court, my name is Thomas McKay. I'm an assistant United States attorney in the Southern District. I represent the United States in this appeal as I did at the trial. To address the points that he made with regard to the 924C count, first, 926B does not carry the blanket immunity that defense counsel suggests. It's not in the statute. There's no case law supporting it. And the hypothetical question that Judge Lynch asked about the import of that argument strikes to the heart why that's an implausible reading of this statute. I'd also note that there are specifics in 926B, like the requirement that the officer be carrying his identification, that make clear that what is going on in this statute is an exemption from state concealed carry laws, and doesn't purport to supersede a statute relating to carrying a firearm in connection with a crime of violence or a drug crime. In addition, the defendant's conviction on the 924C count was based not just on the use of his service weapon, but also his use of the shotgun during that meeting that the court was just inquiring about. And as Judge Lynch— But if there was a legal—if there were a legal defect because of the 926B argument, then wouldn't that invalidate the count because it is technically a duplicitous count? It is hard to tax the government for being so nice as to not charge two 924C counts that would have led to, on proper conviction, a five-plus-a-25-year mandatory consecutive sentence. I'm not complaining that you put them in the same count, but the risk there is—am I wrong about this? That that argument is a legal argument, and if we accepted it, would we not have to presume that the jury might have returned a verdict on that rather than the other? Yes. I think you correct—in your question to Mr. Adler, I think you correctly stated the law about factual versus legal insufficiency. We don't think there's legal insufficiency with the 926B. And then as to the shotgun— We can't say we're not going to reach the 926B argument because he's guilty anyway under the other prong of the count if that 926B argument counts as a legal insufficiency. I suppose that's right, Your Honor. Just to speak briefly to the shotgun count, though, I know you also need to—or the shotgun aspect. That is a factual sufficiency question. The jury heard the argument that this was a beef about a romantic dispute. They rejected it. The testimony suggesting that it was not, in fact, just about a romantic dispute but that it was bad for the drug business is at 232 to 234 and 262 to 263 of the transcript. If the Court has questions about any of the other issues, I'm happy to answer them. I have a couple of questions for you, just as a technical matter. In your brief, you give us 723 and 726, the recorded phone calls. Are those in the appellate record somewhere? Can we listen to those? Your Honor, I don't think we—I'm sure that we did not submit the audio recordings of them. We may have submitted the transcripts of them. I will check that. And if we did not, we're happy to submit either the audio or the transcript. That would be helpful. Would you like audio or transcript or both? Both, please. Okay. And second, I had a concern about the application of Amendment 794 and what seemed to me some confusion about what that means. And as I understand the Sentencing Commission's move, it went from—it tried to resolve a circuit split, actually, on whether you're supposed to look for a minor rule adjustment to the average participant in a crime of this type versus this particular crime and the Confederates. And the District Court said, relying on your sentencing memorandum, that as to minor rule, the commentary in case law says you look at whether this defendant is less culpable than the average participant in this type of offense. But in fact, that standard, I think, had been abandoned by the time the sentencing came around for Mr. Alston. And the District Court ends up saying, I can't conclude that he was less culpable than his Confederates, applying the actual crime standard. But in your sentencing memorandum, you referred to the question being whether he was more or less culpable than the average drug dealer. So it seemed to me that reflected some continuing confusion, possibly, about what Amendment 794 does. What is your understanding about what the standard needs to be now or is now as imposed by the Sentencing Commission with respect to minor rule? Your Honor, if I may, first of all, I apologize if there's any imprecision in our brief or in the District Court's comments. I do think as a factual matter, the factual findings that the Court made were that the defendant, as a police officer using his position to protect drug dealers, as a police officer giving inside information to a drug dealer, as a police officer escorting a drug dealer to a crime, whether you're looking at it under either lens, whether it's the broader drug dealing generally or this case specifically, there's no way to find that he engaged in a minor rule. So regardless of the applicable standard, I think the factual findings which are reviewed for clear error clearly meet both standards. And so to the extent that there was some imprecision in our comments or in the judge's comments, I think it would be immaterial. But isn't it the case that the Sentencing Commission has now clarified that we don't look at the average participant in the average drug crime across the nation, we look at the individual with respect to the relative contributions of his confederates, actually? Yes, Your Honor. And I would note that I think Judge McMahon, in the sentencing transcript, I believe her findings on this are at 485. That's what I was just quoting from, actually. But on the page before, she said as to minor rule, we look at whether this defendant is less culpable than the average participant, and she relies on the government's assessment in so stating. So I was concerned about that. And I do think that she specifically references the value that Gabriel Reyes put on Alston's assistance in this drug crime, which I think is something that is sort of unique to the particular organization that we're talking about here in this case. Was he taxed with the entirety of the drug quantity for all of Reyes's drug dealing? No, he was not. He was only assessed in terms of the drug quantity for calculating his sentencing guidelines  No, Your Honor. There's three different possible drug weights. The highest, what we saw in our sentencing submission, was the full extent of Reyes's participation, 200 kilograms. A compromised position might have been 40 kilograms, which is the quantity that Reyes estimated the defendant was personally involved in helping Reyes with. At the end of the day, Judge McMahon Judge actually just said the 5 kilograms that was the mandatory finding by the jury. Correct. Correct, Your Honor. So he is not assessed with, there's this vast conspiracy of hundreds of kilograms. Is he a minor player with respect to that? He was taxed with much less than that. And then the judge specifically said, I can't conclude he was less culpable than his confederates, not than random drug dealers in San Francisco. I think that's right, Your Honor. And you're saying there's sufficient factual basis for that finding? I do, Your Honor. Thank you. Well, we ask that you affirm. Thank you. Mr. Adler, you've reserved two minutes. Thank you, sir. Briefly to the point raised by your colleague, I call the court on the issue of minor role and the application of the new sentencing guideline provision, Amendment 794. I call the panel's attention to page 49 of my brief and the existing authority in the Fifth Circuit Court of Appeals, United States v. Sanchez, Villa-Real. Cited in the brief, never distinguished by the government, applicable in this case, this panel should speak. Whether I win or lose on the point, it's an important point for district courts, and I embrace the questions that were raised, regardless of the take. Is there no authority of this court? I think I'm correct that there is not. That addresses Amendment 794 and says what its plain language is, but it says, we have never said, this means what it says. This is why I came here today? Among other reasons. We have a summary order, actually, to that effect, but not a presidential opinion. All right. And following up on the reserve point dealing with what I would call an at-pew era, your colleague, Judge Calabresi, in Xi-Wei Su v. Filion, which is cited in the briefs, focused on the government's obligation, what I have characterized as an at-pew era. The government on direct examination, let me repeat that, on direct examination, asked their cooperator, they can't come into a courtroom without a loose-leaf book, so it's a script. It's not a one-off. It's not a blurt out on cross-examination. You got a legitimate job, no legitimate job. Right. And then on cross-examination, the defense asked him about the car wash. But my point is, they didn't correct it. It should have been corrected by the government right then and there. And secondly, in terms of the disclosure the day before sentencing that their witness, Reyes, had been involved in possession and trafficking and contraband, they disclosed it. I requested particulars. That was a disclosure of misbehavior that occurred after the trial. Well, they said it was, and they said it in an unsworn letter. I don't like unsworn letters. I like things that say, under the penalties of perjury, when I deal with that office, for obvious reasons. And what I'm saying to the court is, I never got an inquiry. I asked the chief judge, the chief district court judge who tried this case, to get particulars out of them. I got nothing. So they know when he was dealing with this, if he was dealing with it. I got no 302s. I got no memos from the Bureau of Prisons. I got nothing. And all I'm saying is, I think I'm entitled to something if my client's doing 20 years a hard time. No one on this panel should ever be doing hard time as a cop in a federal system. It ain't pretty. Did the records show that Mr. Adler made a gesture indicating disapproval? I did. With deep ethnic origins. It is. I plead guilty to that with an explanation. But suffice it to say, what I asked the court to do is to hold the appeal in abeyance, remand the matter for such hearings that are appropriate to flesh out when Reyes, well, to paraphrase somebody, what did he know and when did he know it? When did he do it and when did he start and what did he do? They're playing hide the hat. I'm simply saying to you, don't tolerate this from them. I ask you to reverse. Thank you for your time. Thank you very much, Mr. Adler. It's always good to see you. Good to see you, sir. We'll reserve. Yeah. Regards to everyone. We'll reserve decision.